which presents essentially the same issue. The argued case is number 17-1535 Williams versus MSPB. Mr. Schoenhardt, right? Did I pronounce that correctly? Schoenhardt, your honor. Go ahead. Thank you, Judge Dyke. Good afternoon and may it please the court. Paul Schoenhardt, appearing today from McDermott, Will and Utmery, representing the appellant Derek T. Williams, adverse to the Merit Systems Protection Board and the U.S. Postal Service. Mr. Williams respectfully asks that this court reverse the MSPB's finding that it lacks jurisdiction over his appeal and remand this case for final adjudication on the merits or in the alternative to restore Mr. Williams directly to his position with the U.S. Postal Service with back pay. If we were to disagree with you about the break-in service and to conclude that under the regulation there was a break-in service here, then we're confronted with the Exum issue and unfortunately neither one of you really addresses the authority on which Exum relied in reaching the conclusion that it did, which is our decision in Covington. Are you familiar with that? As a general matter, your honor, I am. I have reviewed the decision, but I agree it was not something that was briefed by the parties and it is a decision, however, that was relied on by the board in reaching its Exum rule, a rule that it has now applied for approximately 20 years. I guess the question is whether the Exum rule is compelled by Covington or not. Frankly, your honor, I don't know. I mean doesn't Covington rely on the doctrine which is prevalent in our case law involving retirements and resignations in which an employee who takes an otherwise facially voluntary act such as a retirement or resignation can nonetheless appeal to the board and say because I was given improper information or I was forced out or the like that that becomes an involuntary adverse action appealable to the board. That's what Covington's relying on, isn't it? That's generally my understanding, your honor. And so that's talking about what's an appealable action versus who's an employee entitled to appeal, isn't it? I'm not sure there is any real distinction between the question of who is an employee and what is an appealable action in a case of this type. If you're an employee entitled to appeal an adverse action, you can. If you're an employee not entitled to appeal, even if you're subject to an involuntary retirement or the like, it probably wouldn't happen with a retirement because you're too far out, but a resignation, say. If you're six months into the job and you resign and then come back and say, but I was forced to resign, you have no appeal rights because you haven't acquired them yet as an employee within 75-11. Isn't that right? You would not have acquired them if there had not been the time. Here, however, we have a situation where you have an employee. The facts of this case are perhaps helpful. You have someone who is clearly an employee at the time he changed positions. And so the act of changing positions functionally removed an already vested appeal right. Doesn't that always happen in the federal government? If you take a job, if you move from one agency to another, or even within an agency, if you have a break in service, as OPM's regulations recognize, you lose your appeal rights. That, I believe, would take us back to the opening question, is whether we're to assume that the OPM regulation of a break in service would apply to any time you're not at work for a particular day, regardless of the reason and what actually qualifies as a break. If we are to assume... If one day, which I gather is OPM's regulation and it's been their regulation for quite some time, isn't enough, then what is? Your Honor, respectfully, I agree that the regulation states a break of more than one or more work days. But that doesn't tell us what qualifies as a break. For instance, the Board has consistently held that entry into a non-pay status is not considered a break in service, even though you are not, in fact, appearing for one or more work days. That's because there's no separation document. There may not even be a personnel action at all. There may just be authority for you to take a leave without pay or some other kind of non-pay status. But when you actually get a separation document, and you have that here, right? You have a specific personnel notification saying your client is being separated from the RCA position, and then you get a new one that makes his appointment to a new CCA position effective five days later. That's a break in service, isn't it? I don't believe so, Your Honor. And this is where I believe the MSPB's prior decision in Rodin is helpful and can assist us in working our way through this. The problem with Rodin is that it relies on this very kind of loosey-goosey notion of some kind of employment contract, right? It uses that language and says, let's look to the substance rather than the niceties of this. The problem with Rodin, and I think the Board is very correct in overruling it, is federal employment isn't by contract regularly. It's by appointment, and its meets and bounds are set out by the statutes. So when you look at whether somebody is employed or not, you look at whether there's an appointment document. Isn't that right? Yes, Your Honor. If you look at whether they were separated, you look and see whether there was a separation document. Again, the separation is reflected in the separation document. That does not necessarily suggest that there was a complete lack of continuity of employment with the USPS. What covers those five days when he wasn't employed by the USPS? There's two, I think, critical facts here, Your Honor. First is that the offer of the position into the CCA role occurred a month approximately. How is that relevant? That's relevant because it evidences the relative status of the parties here, that being Mr. Williams and the US Postal Service, and between the two of them... That assumes they would have some obligation to actually appoint him to that position just based upon that offer, isn't it? The offer itself is expressly a contingent offer, but it is one of the foundational underpinnings, if you will, of their agreement. Until he's actually appointed, he has no legal status, that's right? Well, Your Honor, that's where I think the... I mean, isn't there case law to suggest or government policy, the way it operates, to suggest even if you get an offer for employment with the federal government and even if you accept that offer, it can be revoked up to until you actually get formally appointed. Isn't that right? That's my understanding. So he actually had no basis to believe that he was going to be appointed until the appointment document to the CCA position was signed, right? I wouldn't go that far, Your Honor. Here, although I recognize... And you're legally enforceable, right? And I suppose that's exactly why we're here. I recognize that SF50 forms, or the Postal Service's version, the PS form 50, does not itself have a true force of law, but as Your Honor notes, it is one of the most helpful documents we can have in understanding the character of employment. One of the relevant form 50s here can be found in Appendix 157. At Appendix 157, the same PS form 50 that establishes that Mr. Williams was being separated from his position as an RCA also acknowledges his reappointment into position as a CCA and states that he has a last day in a pay status of April 2, 2015. Mr. Williams did not understand himself to being terminated from the Postal Service. He understood himself being separated from a position as an RCA with a required time in a non-pay status of five days before entering into a position. Where does that required break in status come from? My understanding is that it comes from the collective bargaining agreement with one of the letter carriers' unions. And what's the purpose of it? I don't fully understand the purpose for all of the breaks in service. It would appear to be that certain of the breaks in service are required so as to avoid certain union benefits that otherwise would be obtained if more than a full calendar year of service were to be served. And so for certain positions, a service time of 360 days has been set and it's required to take the five-day break at the front end, I understand. I thought I heard that one of the purposes was for health benefits. Does that ring a bell at all? That's generally my understanding, is that it's for benefits associated with how the union has bargained for the positions. And so is it the union that's bargained for that five-day break in service? That's my understanding, yes. It's that it's a bargaining position between the union and the agency. What does it accomplish by requiring the five-day break? It creates situations where employees are not within a position for a sufficient period of time to entitle them to certain health, perhaps retirement or other benefits. Effectively, unless they exceed that period of service and enter perhaps into another position that's accepted within the bargaining agreement. In your brief, you refer to Chevron deference being afforded to the board's decision and interpretation. But isn't the real question here if Chevron deference is going to be applied, isn't it whether Chevron deference would apply to the agency's definition of current continuous employment? I believe that both, Your Honor, are appropriate inquiries here. Ultimately, we have a situation where we have a functioning parroting regulation. What is your response to whether Chevron deference should be given to the agency's current continuous employment? With respect to what qualifies as continuous, I would not believe that Chevron deference is appropriate as the regulation merely provides the concept of a break, which is definitional of continuous and is not actually exercising agency. What about the language of break and federal civilian employment of a workday? It's not just a break. It's a break of federal civil employment of a workday. Just a workday. So, first, as to the federal civil employment, and this Justice set this issue aside, I'm well aware that this court in Wilder decided that deference was afforded to this regulation for purposes of what type of service would qualify under the statute, and then that the board's regulation specifying federal civilian service was appropriate as a clarifying regulation. You mean the LPM regulation? Yes, Your Honor. I think the harder language to grapple with is probably of a workday. The break of a workday. What remains a question, and Your Honor, I don't have a dispute with what a workday is. The question is, what is a break? Is a break a situation in which you are formally without employment and no intention of returning to that employment? Or is a break any time when you are in a non-pay status for a period of a workday? But he didn't have intention of returning to the same employment. He was taking a new job, albeit within the same agency. The appellant's understanding was that he was taking a new position within the same agency. It's effectively... I'm still confused what you think is an appropriate break. If, for instance, he resigned from one agency and went to work at another agency, that's something that this court has clearly addressed as something that's outside of the bounds of the Exum rule. Within the same agency. What if I'm an attorney at the Civil Division of the Justice Department, and I decide to take a job with the U.S. Attorney's Office back in my home state of Ohio? And I decide I've worked really hard at the Civil Division because they worked me really hard, and I want a three-month vacation. But I've already accepted and received an offer to go to the U.S. Attorney's Office in Ohio. Is that three-month break? I get an appointment, I get a separation paper, I get a new appointment paper three months later, but I've already accepted an offer. Is that a break in service? I would expect, Your Honor, that it would be. And the difference in the character of that to what we're seeing here is one of voluntariness. In that situation, the government employee is voluntarily leaving the government service for a period of time and then returning to government service. Let aside that voluntariness question, because I think that's another aspect of the case that doesn't really deal with what's a break. A break is a break, whether it's voluntary or not. You may have the Exum line to help you come out when it's an involuntary break, but that doesn't really say anything about break. So why is three months a break, but five days isn't? Your Honor, I would not qualify it on the length of time or at least not with any strict time switch. But that's what OPM's regulations define it as, and we have to defer to OPM's regulations. You do not need... Well, only a certain level of deference... How do you define break? Give me some theory of what's a break rather than just a separation under an equivalent SF-50 and a reappointment under equivalent SF-50. I suppose, Your Honor, it's actually that term reappointment that consistently catches me. If there is actually a complete termination, such that you have severed ties with an agency or an employer, that, to me, would become a break. What does it mean, complete severing of ties? We have an SF-50 here ending his appointment and then giving him a new appointment in a different position. But, Your Honor, that's precisely the issue, is that here, that same SF-50 that purports to say you are no longer part of this organization says, but yes, we fully intend for you to be a part of this organization, we require a break in a non-pay status of five days. Sure, but if on day four they had changed their mind and said, oh, we don't want you anymore, we're not giving you a new appointment, he had no enforceable rights to that new appointment until he actually gets the appointment document, right? At that time, Your Honor, he may not have any enforceable rights as to that new appointment, whether he could then say that his RCA position was improperly yielded. Right, but you're trying to get back to the voluntary stuff rather than tell me what you think break is. I don't see how we define break other than by looking at the appointment document. I'm sorry, you can answer, but I've taken you way over. Where's the SF-50 here? Appendix 157, Your Honor. What about box 79 that says, Termination Non-Career? Doesn't that operate against your client? So, Termination Non-Career is the designated description that is assigned to Nature of Action Code 352, which appears in box 77. That's a standardized set of codes to be used in box 77. The description is then auto-completed. Termination Non-Career is, as I understand it, the standard designation when, in fact, you are separating from a position of this type. Here, I think the most critical thing to focus on is the Remarks section at the bottom that is tied to Code 522 in box 80. Which page is this, on 157? Yes, Your Honor, again, Appendix 157. Where at the bottom? At this point, Your Honor, I'm directing you to the Remarks section near the bottom of the page. We have, Last day in pay status, April 2, 2015. Separation employee was separated for required break in service, reappointment to different position. This, in my view, is a direct reflection of the Postal Service's view that this is not an employee that is... Are you relying on the requirements of the union contract as being the determinative factor here, so that the fact that the union contract required the five-day break in service means that it shouldn't be counted as a break? Is that what your argument is? Functionally, yes, Your Honor. It's our contention that a required break in service is not an effective break in service. Getting to Judge Hughes' question, which I believe is tied to yours, Your Honor, it is our view that a required break in service under the union contract does not qualify as a break in service under 7511 simply by virtue of using the word break. You're relying on Rodin for that position, right? Rodin with the idea that look at the policy behind what Congress is trying to do here and determine whether this, in fact, is a break or not. Well, Your Honor, agreed, and yes, Rodin would tell us that we shouldn't even be getting to the OPM's regulation, that OPM's regulation, simply using the term break of a workday instead of continuous, is not functioning as an act of agency expertise to promulgate a regulation. If that's your logic, doesn't it convert all CCA positions that are occupied by preference-eligible employees into appealable positions? Because they, even if they didn't come from an appealable position, if they're put in a CCA position and they're preference-eligible and that mandatory five-day break doesn't count, then as soon as they get a few days into their second one, they now have appeal rights. It seems contrary to everything that the CBA stands for. I mean, it requires a break in service. Well, Your Honor, I don't believe the collective bargaining... I think it's very shocking to the union that you're taking this position. I don't see why the collective bargaining agreement should operate in such a way as to The bargaining agreement is there to account for the duration and types of various positions, pay grades of those positions, benefits that may be eligible and awarded to those positions. It also might be there to account for the fact that unions prefer arbitration in the grievance proceedings over appeal rights. And if that's the case, then they want these CCA people to go through the grievance process, not through the MSPB process. I don't believe the parties have briefed or that there's been extensive argument on there being an alternative process that Mr. Williams ought to have taken, as opposed to attempting to exercise his appeal rights. He's clearly entitled to go through the grievance process under the CBA, right? I do not. You haven't looked at the CBA? I'm sure that the Postal Service people will tell you that he is. Generally, Postal Service employees who are preference-eligible have either the select option of going through the grievance proceedings or through appeal rights if they have them. There's nothing that prevented him from filing agreements here, I would think. He just didn't do it. Well, Your Honor, respectfully, the appellant had been employed for over two years in the U.S. Postal Service continuously, and he is eligible and believed himself eligible for appeal rights under 7511. Okay, why don't we stop there? We'll give you two minutes for a moment. Good afternoon. May it please the Court. The MSPB correctly determined that... Why does this union agreement require a five-day break in service? That may be something my colleague for the government can answer better than the MSPB can. Typically, we do not review contractual provisions. That's something that perhaps FLRA can do, but that's not something that's within the MSPB's jurisdiction. My understanding of the CBA, though, from my reading of it, would be that the five-day break in service is there to ensure that there's only a 360-day term in the CCA position, which would likely, and this is just speculation on my part, be to prevent people from getting 365 days of employment, which would then afford them MSPB appeal rights. But again, that might be something my colleague for the government can answer better than me. So, again, the MSPB correctly determined that the petitioner failed to establish jurisdiction under the Rodin Doctrine, but we do request that this matter be remanded so we can further examine our line of cases under Exum. We did not discuss Covington in your brief. You are correct, Your Honor, but the reason we did not is because we were asking for a remand, and I want to be careful about how I address that here, because I don't want to delve into giving an advisory opinion about what we would do on remand. But you are correct that it comes out of the Covington line of cases about making informed decisions and only being bound by informed decisions. Whether that is correct is the reason we are asking for a remand so we can examine it further. The line of cases relates to allegedly involuntary retirements or resignations, right? Not transfers from one job to another. Again, Your Honor, I don't want to opine too much about the propriety of... We have the discretion whether to award a remand or not. So you should probably go ahead and answer the question. I understand that you do have the discretion, Your Honor, and it's something, though, that we are barred from issuing advisory opinions by law, and if we were to answer that question and discuss the propriety... So if we asked hypothetical questions... Well, I will say yes. The Covington decision is about adverse actions and whether something is an adverse action, and the Exum line of cases stems from that by extending the doctrine to say that other uninformed decisions will also not be binding. But whether or not that's an appropriate interpretation is the reason we're seeking the remand. We would like to examine that further and see if that is actually a valid doctrine. Even if we kept that doctrine, wouldn't the involuntary action here and the adverse action be his resignation from his RCA position? It would have nothing to do with his CCA position. That is possible, but I do not believe the petitioner has alleged involuntary resignation. The whole line of case law we have on involuntary actions, whether they're involuntary retirements or involuntary resignations, are directed to that decision being made without a lack of knowledge, and if they show that it's true, then they usually get to rescind that decision. It rarely happens, but I think it's happened a couple times. But it's that decision to involuntarily resign made without proper knowledge that is the adverse action that can then be appealed. So how would it affect his status as an employee for a subsequent position at all? In other words, how can the involuntary action doctrine give you appeal rights in a new position versus just let you fully exercise your appeal rights for the prior position? Your Honor, I think that question hits at why we would like the remand. Are you aware? I mean, doesn't it make more sense? I know you don't want to answer this. I'm not going to hold your board to what you say. We're trying to ask you questions and hypotheticals, but maybe you have been directed not to answer. But it seems to me the logical extension of Covington to these cases and the way this has been applied is always to the decision that is alleged to have been involuntary, which is here to resign the RCA position and accept a CCA position. So if the that's where his appeal is from. And he could be potentially, if it was shown to be involuntary, put back in that position, but it doesn't have anything to do with his CCA position. Why isn't that the right way to look at it? That would have to be something first alleged to the board. That's not something the board can just consider sua sponte. If he wanted to allege an involuntary resignation, that would be something the board considered, but that's not how this issue arose to the board. It's just whether or not he was an employee with appeal rights. What is the board's position on retirement and resignation? Is a retirement and resignation involuntary under the board decisions if the employee is not advised that by retiring or resigning, he or she is surrendering the right to challenge the adverse action? The board's position on involuntary resignation follows the Covington doctrine, which is about incorrect information. The failure to advise about the surrender of appeal rights. Is that considered to make the resignation involuntary? I believe that would be an appropriate extension of the Covington doctrine, but at the same time I'm not entirely certain I'm happy to provide supplemental briefing on that question if the court would like it. I'm uncertain as to whether or not the board has found lack of information to be the equivalent of misleading or incorrect information under Covington. Thank you. Good afternoon. On behalf of the United States Postal Service, we ask that this panel deny Mr. Williams' petition for review. So why does the union agreement require a five day break? What's the purpose of that? We have some evidence in the record. I wouldn't say it's necessarily complete information. There is an affidavit in the record from a postal service employment and payroll specialist who talks about the five day break in service on federal health federal employee health benefits and federal employee retirement benefits and how that interplays with the 360 days of a CCA position. That's the best explanation we have in the record. Whether there might be other explanations in the record as to say why the union agrees to the five day break in service it's just not in the record. Is that in our appendix? It is. I can give you the page number. So they don't get employee benefits through the federal government if it's less than 365? They get some and I can point you to the direct language. So it starts at appendix 449 and runs through 481 and that also includes a part of the collective bargaining agreement. So starting at 449 Again, this is a declaration of Ms. Erin Dimmick who is an employment and placement specialist a team lead at the postal service. So she explains on 450 in paragraph 8 when an employee serving in an RCA appointment Mr. Williams' first appointment, applies for and is selected for a CCA appointment, his second. A five day break in service is necessary to A, ensure that the employee serves in the 360 day appointment because that CCA position is a term limited 360 days as specified in the national agreement B, remains eligible to participate in federal employee health benefits and C, does not become eligible for coverage under federal employee retirement services. I mean it also, at least from part of what you read references the CCA position as a non-career position, which has a certain term of art in the federal employment lingo, doesn't it? Yes, I believe it does. A lot of, I apologize for the panel's frustration with the lack of evidence in this record. Part of that may be because Mr. Williams has never challenged the legal propriety of the five day break in service required by the collective bargaining agreement in the first instance. But that's true, but he is arguing that the fact that the break was mandatory and required somehow should affect the question of whether it should constitute a break. The United States Postal Service would agree with that. So in the collective bargaining agreement it does specifically say that a transfer from an RCA position to a CCA position requires a five day break. It actually does use that word break which mimics in Paris the regulation which also uses the word break. So yes, in that instance the Postal Service would argue that the collective bargaining agreement actually mimics the same language in the regulation and that a break, as that term is defined in the regulation is what was intended, right? A break or an interruption in service of more than a work day meant to interrupt the current continuous service requirement necessary for board appeal rights in the first instance. Is there any way to non-competitively transfer from an RCA position to a CCA position? I don't believe there is, no. There are job descriptions in the record which I can find if you need me to. And if there's no right to an MSPB appeal then what is the alternative to go to arbitration? Is that the alternative? So that also was not briefed below. I have it on some authority from my Postal Service counsel here at the table that we do believe that the collective bargaining agreement includes a grievance provision that would apply to Mr. Williams, but again the entirety of the collective bargaining agreement is not in the joint appendix and I honestly can't recall if it's in the record from the administrative proceeding below or not, or if it's only a portion. So I can't say it with definity. When an employee of the Postal Service confronts an adverse action and elects to retire or resign instead of appealing to the MSPB does the agreement for resignation or retirement advise the employee that he or she is surrendering appeal rights with respect to the adverse action? I don't have that evidence in front of me to answer that question. This wasn't a resignation or retirement in those circumstances. Mr. Williams was an RCA carrier. He voluntarily applied for and was selected for employment in a new position. He switched jobs of his own volition. Do you think that's different from a retirement or resignation? I mean, Covington is dealing with a retirement or resignation situation. Is that different in terms of the advice that the employee should receive from a job transfer situation? I believe it is. I think Covington is distinguishable. In the Covington context, there was an individual if memory serves, who resigned but it was wrapped up in a reduction in force. So that brings then into the question whether or not the resignation is truly voluntary or not. That is not the case here. Mr. Williams was in a position as a Royal Carrier Associate. He could have continued in that position had he wanted to. He instead applied for what presumably appeared to be a better job as a CCA and he got it. Just like many federal employees will apply for other jobs for any number of reasons. But that was his voluntary act and from the Postal Service perspective there's no basis in statute or regulation to impose a duty to advise an employee, an individual, who is looking to switch jobs, how their rights would change. As that duty to advise is espoused in Exum, it's also a duty that has no limits and is unworkable and has been unworkable in practice. Which is why we are seeking to have this court overrule that line of precedent. The duty to advise as originally espoused by Exum has only been limited by another MSPB decision, Park, to apply only to intra agency transfers as opposed to inter agency transfers from one agency to the other. Which certainly is one helpful limitation on the doctrine. The cases have been inconsistently applied as to whether or not the duty is only triggered if there was notice that the employee was under some misapprehension of their rights. Sometimes misapprehension is required sometimes it's not. There also would be no limits if the logic underlying the duty to advise in Exum, if this court were to find it sound, well then where does that duty to advise end? Does it end with just board appeal rights or does it extend to health benefits or retirement benefits or other factors of employment? The list is endless and the board has not adopted the duty to advise in any kind of cabined or reasonable parameters that would make it something that could even be applied. But that's an argument in the alternative. In the first instance we argued that there is no basis in statute or regulation for Exum's duty to advise in the first instance. Which is why we are arguing it should be overruled. I want to ask you about the Chevron deference. Is there any impact at all on the Chevron deference and how it applies here where the agency's definition came out three and a half years after Rodin? No I don't believe so. As we argued in our brief, if law is not good law, it's not good law. So is it regrettable perhaps that Rodin was in force for as long as it was? Arguably yes. But to the extent the board has now corrected an error, even a long time error. It was an error nonetheless and jurisdiction is jurisdiction. It's defined by Congress. It's not defined by the board. It's not defined by voluntary employment agreements between federal agencies and individuals. The Congress has spoken. It has said that one year of current continuous service is required. In the first instance we argue that that word in the statute continuous has its plain ordinary meaning to preclude any interruption in service. The regulation that OPM adopted several years later in the first instance we have argued is merely an implementation of a plain and unambiguous statute. So you don't get past Chevron step one. But if we did, the OPM regulation would be entitled a deference? Yes. If you did find that the statute, that use of the statute's word continuous. But not the board's decisions? But not the board's decisions, correct. The board, by the time the issue gets to the board, the board is merely applying what is plain and unambiguous law as stated by the statute and regulation that it's implementing. Well, suppose the regulation were ambiguous. Does the board earn any Chevron deference? Not with respect to its own jurisdiction. It is entitled to some deference when it's applying rules of its own procedure. But in the context of jurisdiction we would say that that's not something that would be entitled to deference. But again, we don't get there in this instance because the board was simply applying what were plain and unambiguous statutes and regulations. Okay. Thank you. How long? Mr. Schoenhardt? A couple minutes, yeah. Two minutes. Thank you for the additional time. If what we're really looking at is Wait a second. Two, not four. Okay. Thank you. Thank you, Your Honor. If what we are really looking at is a plain and unambiguous statute, then we shouldn't need to look any further than the statutory language itself, current continuous service. Here we have an appellant who served continuously in the Postal Service and understood himself to be serving continuously. The Merit Systems Protection Board in Rodin expressly interpreted the language continuous. Although on remand in this case, or in his companion Wynn case, the board went back and said what we had been doing was an impermissible construction, and we weren't really interpreting the language continuous. Rodin itself says this is what we understand continuous to be. When there is an effective ongoing employment contract, and Judge Hughes, I acknowledge your point that going into a position... There is no such thing as an employment contract in federal government. And I do appreciate your position on that, Your Honor. Well, I don't think it's a position. I think it's the precedent in this Court dealing with a lot of these issues that says federal employees serve by appointment not contract. And so that's the problem with Rodin is that it relies on a faulty premise of law. Faulty in terms of whether there is a legally enforceable contract. I believe the notion of the continuous employment contract in Rodin was intended to be an equitable notion recognizing that there are government positions that naturally roll into repeated occurrence positions. As did the situation here where we have an employee that was placed in a functionally a leave status and something that I don't believe that either party noted. So let me ask you this. Is it your position that essentially any federal employee that serves in these non-career term positions that never go for a full year nevertheless if they serve in them year after year would get appeal rights to the MSPB? I believe that would be correct, Your Honor. Consistent with the Board's view of seasonal employees. Are you aware of how many agency practices that would disrupt and how many agencies rely on OPM's regulation that allows a day break in service to render an actual break in the continuous service? Given the longstanding precedent of Rodin I would suspect that this would not be highly disruptive as many would have expected for approximately the last 30 years that MSPB rights were not lost in such circumstances. When was OPM's regulation enacted? OPM's regulation came in in 1988 but even after that agencies might have been relying on OPM's regulations for the last 30 years. Even during that time as Your Honor is well aware the MSPB continued to apply Rodin up through and including the Melvin decision in 1998 a decade later. 20 years ago. 20 years ago. Okay. Thank you Mr. Schindler. Thank all counsel. The case is submitted. That concludes our session this afternoon.